# 15 CV 0246

UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF NEW YORK

JUAN RAMON MARTINEZ

               PLAINTIFF                                    COMPLAINT

     -against-                                         JURY TRIAL YES

                       DEFENDANTS,

David Barbaro Proxy For Robert Howe
 individualy and as Officer of
THE CITY OF NEW YORK;

NEW YORK CITY DEPARTMENT OF
HOMELESS SERVICES;

Velda Graves Individually and
as  Director Kingsboro STAR Men's Shelter;

Kingsboro Psychiatric Center
Mail Department ;

NEW YORK CITY HUMAN
RESOURCES ADMINISTRATION
and Centers
HRA Center # 38
HRA Center # 40
HRA Center # 35 Dyckman 4055
HRA East River Center # 37
HRA Dekald Center # 64


SALVATION ARMY HEAD- QUARTERS
Responsible forKingsboro
MICA Shelter Building # 8  Mail Department;



RECEIVED JAN 13 2015 PRO SE OFFICE

     I.     Parties in this complaint:

**Plaintiff Pro-se**

    1.  Juan Ramon Martinez reside at 190 Stanton Street, Manhattan New York 10002.

Plaintiff Summary:

2.  Plaintiff was release from prison on February 1, 2008, after sixteen year of incarceration to Bellevue Men's Shelter 400-430 East 30st. NY 10016.

3.  When reporting to Parole Officer Plaintiff was order to enroll at Phoenix Academy a Residential Substance Abuse Program, After 16 years of incarceration Plaintiff does not have a drug problem. **Pay by Medicaid and Human Resources Administration.**

4.  After six months Plaintiff was assessed for **Vocational and Educational Services for Individuals with Disabilities (VESID**) Plaintiff started a CTP a Substance Abuse Training Vocational Program, while in Phoenix Academy.

5.  After nine months Residential in Phoenix Academy Plaintiff move in with girlfriend in 2440 Walton Avenue Bronx NY 10456.

6.  Plaintiff Transferred VESID case from Brooklyn to the Bronx VESID Office, after another Assessment with the Bronx VESID office Plaintiff was approved for Ferrari Driving School.

7.  After a month Plaintiff had to drop out because Ferrari driving School did not wanted to change Plaintiff schedule, Plaintiff was on heavy medication and could not drive.

8.  Plaintiff applied for Food Stamps and other benefits, when to an **Wellness Comprehensive Assessment Rehabilitation and Employment (We-Care) , The (We-Care) Medical provider has determined that Plaintiff are Unable to work and may be eligible for Federal disability.**

9. Plaintiff applied for SSI and was denied, waiting for second SSI Administrative Hearing.

10. Parole Officer ordered Plaintiff to enroll in another outpatient Substance Abuse Program, at Tri Center Grand Concourse Bronx New York Plaintiff graduated Tri Center Substance Abuse Program. Program was **pay by Medicaid and Human Resource Administration.**

11. Plaintiff move out of girlfriend enroll in another Substance Abuse Program, Narco Freedom 149 Street Bronx New York, graduated, was send by Narco Freedom House 2 Coordinator to Belleue Men's Shelter.

12. Program was **pay by Medicaid and Human resources Administration.** Once Plaintiff enter the Shelter system Plaintiff is allowed to save part of him income, but Plaintiff income is reduce automatically once Plaintiff enter the shelter system.

13. Once Plaintiff enter the Department Of Homeless Services Plaintiff is allowed to save part of his income, but Plaintiff income is reduce automatically once Plaintiff enter the shelter system.

14. The following Shelters are under the authority and policies and procedures of (DHS) and (HRA), where Plaintiff have been and have compare their own Policies and Procedures

15. Bellevue Men's Shelter 400-430 East 30st New York New York 10016

16. Kingsboro STAR Men's Shelter 681 Clarkson Avenue Building # 6 Brooklyn New York 11203

17. Community Support Services 1 Keener Building Wards Island, New York 10035

18. Salvation Army Mail Complaint, 120 East 14 Street New York 10011, 212-337-7200

19. Kingsboro Psychiatric Center Mail Complain, 681 Clarkson Avenue New York 11203, 718-221-7700

20. McGuinness Men's Shelter 400 McGuinness Boulevard Brooklyn New York 11222

21. Department Of Homeless Services 33 Beaver Street New York 10004, 212 232-0546

22. The STADIUM Men's Shelter 1260 Sedgwick, Bronx New York 10452

23. Human Resources Administration 180 Water Street New York New York 10038

24. Seneca Houses Freeman Houses 1215 Seneca Avenue Bronx New York 10474

25. Samaritan Village  Men's Shelter 988 Myrtle Avenue, Brooklyn New York 11206

26. Park Overlook 1938 Webster Avenue, Bronx New York 10457

27. Freedom House 316 West 95 Street, New York New York

28. El Camino Inn 160-11 89th Avenue Jamaica New York 11432

**Defendants:**

29. The City Of New York Office of the Comptroller Claims and Adjudication 1 Center Street New York New York 10007.

30. New York City Department of Homeless Services hereinafter (DHS); 33 Beaver Street 17 floor New York New York 10004  212-361-8000.

31. Velda Graves Individually and as  Director Kingsboro STAR Men's Shelter 681 Clarkson Avenue Building # 6 Brooklyn New York 11203.

32. Kingsboro Psychiatric Center Building  # 8,  Mail Room Complain, 681 Clarkson Avenue New York 11203, 718-221-7700.

33. Salvation Army  Mail Complaint, 120 East 14 Street New York 10011, 212-337-7200

34. Samaritan Village  Men's Shelter 988 Myrtle Avenue, Brooklyn New York 11206

35. Human Resources Administration 180 Water Street New York New York 10038

36. Office of The Administration Hearing 14 Boerum Place Brooklyn New York 11201

37. New York City Human Resources Administration hereinafter (HRA).

38. HRA Center # 38 305 Rider Avenue Bronx New York 10451 718-742-3924

39. HRA Center # 40 260 East 161 Street Bronx New York 10457 718-664-1140

40. HRA Center # 35 Dyckman 4055 10 th Avenue New York New York 10034, 212-569-9626

41. HRA East River Center # 37 One Honeywell Street Long Island City New York 11101, 718-752-7001

42. HRA Dekald Center # 64 500 Dekald Avenue Brooklyn New York 11205 718-636-249.

## II.     Jurisdiction and Venue

43. Jurisdiction is proper under 28 U.S.C. 1331

44. Venue is Proper for all defendants under  28 U.S.C. 1391 where defendants main office is New York City Comptroller Claims and Adjudication, and all other defendants are departments or agencies under The City Of New York.

45. Plaintiff Claim for declaratory relief pursuant to 28 U.S.C. 2201 and 2202.

### III.   **Nature of Complaint Claim**

This action is to address Plaintiff civil rights 42 U.S.C. 1983,  and the Laws of the United States

mention here in to, as well as New York City Laws and New York State Constitution42 U.S.C.

2000a-6 Jurisdiction; exhaustion of other remedies; exclusiveness; assertion of right based on

other federal or State laws and pursuit of remedies for enforcement of such rights (a) the

district courts of the United States shall have jurisdiction of proceedings instituted pursuant to

this subchapter and shall exercise the same without regard to whether the aggrieved party shall

have exhausted any administrative or other remedies that may be provided by law.

Department of Homeless Services Transferred Plaintiff from Kingsboro Men's Shelter for no

reason other than retaliation, for Plaintiff complaints, 42 U.S.C. § 1997d; reporting conditions

which may constitute a violation under this subchapter shall be subjected to retaliation in any

manner for so reporting.

Defendants refuse to provide Plaintiff with services requested.42 U.S.C. § 2000a-2: Prohibition

against deprivation

 42 U.S.C. 12203:  Prohibition against retaliation and coercion; (a) retaliation   no person shall

discriminate against any individual because such individual has   opposed any act or practice

made unlawful; (b) interference.

42 U.S.C. § 1986 :US Code - Section 1986: Action for neglect to prevent revery person who,

having knowledge that any of the wrongs for all damages caused by such wrongful act.

42 U.S.C. § 1320a-8: Civil monetary penalties and assessments for subchapters II, VIII and XVI

(a) False statements or representations of material fact; (1) Any person (including an

organization, agency, or other entity).

42 U.S.C. § 2000a-1 : US Code - Section 2000A-1: Prohibition against discrimination or segregation required by any law, statute, ordinance, regulation, rule or order of a State or State agency All persons shall be entitled to be free, at any establishment or place, from discrimination.

42 U.S.C. § 2000a :Prohibition against discrimination or segregation in places of public accommodation (a) Equal access All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages.

42 U.S.C. § 2000a-2 : US Code - Section 2000A-2: Prohibition against deprivation

42 U.S.C. 12132: Discrimination subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. 12182: Prohibition of Discrimination by public accommodations; (a) general Rule (1) General prohibition (a) Activities (i) denial of participation.

42 U.S.C. § 1986 :US Code - Section 1986: Action for neglect to prevent revery person who, having knowledge that any of the wrongs for all damages caused by such wrongful act.

42 U.S.C. § 1304 : Reservation of right to amend or repeal

42 U.S.C. § 1320a-8: Civil monetary penalties and assessments for subchapters II, VIII and XVI (a) False statements or representations of material fact; (1) Any person (including an organization, agency, or other entity).

42 U.S.C. § 1997d : US Code - Section 1997D:reporting conditions which may constitute a violation under this subchapter shall be subjected to retaliation in any manner for so reporting.

42 U.S.C. § 2000d Judicial review; administrative procedure provisions, Any department or agency action taken pursuant to section 2000d-1.

42 U.S.C. 12203: Prohibition against retaliation and coercion; (a) retaliation no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful; (b) interference.

42 U.S.C. § 1320a-8 : US Code - Section 1320A-8: Civil monetary penalties and assessments for subchapters II, VIII and XVI (a) False statements or representations of material fact; (1) Any person (including an organization, agency, or other  entity).

42 U.S.C. 1985- Conspiracy to interfere with civil rights (3) Depriving persons of rights or privileges.

CPLR 103 Form of Civil Judicial Proceedings, (c) Improper form if a Court has obtained jurisdiction over the parties, a civil Judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the Court shall make whatever order is required for its proper prosecution. If the Court finds it appropriate in the interest of Justice, it may convert a motion into a special proceeding or vice versa upon such terms as may be just including the payment of fees and costs.

NEW YORK STATE CONSTITUTION

ARTICLE I BILL OF RIGHTS: Equal protection of law: discrimination in civil rights prohibited 11. U.S. Constitution guarantee individuals the rights of Due Process of the Law the 5th Amendment, the 14th Amendments.

NEW Y N.Y. ADC LAW 8-603: NY Code- Section 8-603: Discrimination harassment:29 U.S.C. 794 (a) (b) (1) (A) (2) (A) (3) (A) Nondiscrimination under Federal grants and programs:

NEW YORK STATE CONSTITUTION

ARTICLE I BILL OF RIGHTS: Equal protection of law: discrimination in civil rights prohibited 11.

U.S. Constitution guarantee individuals the rights of Due Process of the Law the 5th

Amendment, the 14th Amendments.

Code Federal Regulations 7 CFR 15, Subpart C- Rules of Practice and Procedure for Hearing,

decisions and Administrative Review Under the Civil Right Act of 19647 CFR 247.37 CIVIL

RIGHTS REQUIREMENTS;Title VI of the Civil Right act of 1964,Title IX of the Education

Amendments of 197220 U.S.C. 1681 et seq.

Section 504 of the rehabilitation Act of 1973;

 Title II and title III of the Americans with Disabilities Act;

29CFR Part 1630- Regulations to Implement the equal Employment provisions of the Americans

with Disabilities Act. 1630.4 Discrimination prohibited; 1630.9 Not making reasonable

accommodation; 1630.12

29 CFR 1630.4 -Discrimination Prohibited;(1) It is unlawful for a covered entity to discriminated

on 1630.4 through 1630.13.

29 CFR 1630.9 Not Making reasonable accommodation.

29 CFR 1630.12-Retaliation and coercion.

## FACTS OF COMPLAINT AND CLAIM

46. The Following Injustices where done by Human Resource Administration

Employees and the Following HRA Centers.

47. Human Resource Administration transferred Plaintiff Case to a different HRA
    Centers for no reason, other than the fact that Plaintiff requested restaurant
    allowance on 10/10/12 at 305 Rider Avenue Bronx NY 10451.

48. Plaintiff HRA Case was transferred to Dyckman Center 4055 10 Avenue New York
    New York 10034.

49. Narco Freedom is a no-cooking facility, and Plaintiff is entitle to Restaurant
    Allowance and Food Stamps benefit.

50. Plaintiff visited Dyckman Center 4055 10 Avenue New York NY 10451

51. On 11/9/12 Plaintiff requested the benefits that he requested on 10/10/12 Plaintiff
    was told :{ to wait that the restaurant allowance and food stamps would be there
    next week}.

52. On 10/31/12 Plaintiff received another letter stating, {this is to advise you that we
    are authorizing a special Cash Assistance benefit in the amount of $ 247.00 from
    10/4/12 to 11/18/12, reason regular allowance for recurring needs.

53. On 10/24/12 Plaintiff received a Letter from Dyckman Job Center 4055 10th Ave,
    Avenue NY NY 10034 Human Resources Administration stating: {Effective
    11/19/12  we will send you a check for $ 107.50 part of your semimonthly grant of
    $ 231.00 and that the shelter allowance is going to go directly into Narco Freedom}.

54. On 10/24/12 Plaintiff received another letter from Dyckman Center, Stating: {This
    is to advise you that we are authorizing a special Cash Assistance benefit in the
    amount of 247.oo from 10/4/12 to 11/18/12.

55. On 10/24/12 Plaintiff received another Letter from Dyckman center, explaining
    your cash assistance will not be change.

56. On 11/30/12 requested a Fair Hearing # 6242363N.

57. On 11/30/12 I received a letter from Dyckman Center for a mandatory dispute resolution, Appointment. Where Plaintiff was told to go back to Rider Center where I apply for the benefit.

58. On 12/6/12 Plaintiff received another letter from Dyckman Center, stating { a check is being send to you on the separate cover}.

59. On 12/17/12 Plaintiff went to Dyckman Center to find out want happen for Plaintiff benefits Plaintiff was told plaintiff Public Assistance Case was transferred to HRA Center.

60. On 3/5/13 Pursuant to Section 22 of the New York State Social Services Law hereinafter Social Services Law and Part 358 of Title 18 NYCRR a hearing was held on March 5, 2013, before Administrative Judge Angela Calamia;

DECISION AND ORDER:

61. To recompute Appellant's Public Assistance and SNAP budjets Immediately Advise the Appellant in writing of its computations.

62. Restore any lost Public Assistance and SNAP benefits retroactive to October 2012.

63. As require by 18 NYCRR 358-6.4, the Agency must comply immediately with the directives set forth above.

64. Plaintiff have not received any retroactive Restaurant Allowance nor Snap Benefit, as of today September 20, 2013 eleven months after Plaintiff requested the Restaurant allowance on October 10, 2012 and five months since the decision of the Administrative Judge make the decision and order.

65. On April 25, 2013 Plaintiff requested another Fair Hearing

On April 25, 2013 Plaintiff went to request assistance at HRA Center # 37, where Plaintiff was given some papers and told to wait.

66. On April 9, 2013  Plaintiff received another letter and still have not receive the benefit requested nor the decision from Fair Hearing dated March 8, 2013.

67. On 4/18/12 Plaintiff received another letter and still did not receive the benefits requested on 10/10/12.

68. On April 3, 2013  Plaintiff requested assistance from HRA Center 37, was told Plaintiff have to wait.

69. On HRA Center 37 again plaintiff visit.

70. On 5/29/13 and 7/8/13 Plaintiff visit HRA  Center 64.

71. On 7/8/13 Plaintiff Public Assistance Case was Transfer again to Dekalb Center 64, 500 Dekalb Avenue Brooklyn NY 11205.

72. On 9/20/13 Plaintiff visit HRA Center 64 and was told plaintiff Public Assistance Case was transferred to HRA Center 37 again.

73. The Following Injustices where done by the following defendants

74. Once Plaintiff enter the Shelter system Plaintiff is allowed to save part of his Public Assistance income, but Plaintiff income is reduce automatically by (HRA)once Plaintiff enter the shelter system.

**The following complaints and incidents took place in Kingsboro STAR Men's Shelter, 681 Clarkson Avenue Brooklyn New York 11203.**

**Complaint by other Homeless**

75. We would like to request the following changes at Kingsboro Men's Shelter,

operated by ( D.H.S.) Department of Homeless Services, Salvation Army and ( H.R.A.)

Human Resource Administration, funded by State and Federal fund.

**Water Fountains:**

76. Place water fountains on all three floors, with cold and warm water, there are six or

seven of them in the facility, but they are in the employee offices, Case workers,

Operations, Directors, no clients have access to cold or warm water, Tittle II of the

American with Disabilities Act as amended reasonable Accommodation is for clients,

not employees.

**Breakfast:**

77. Is at 5:30 am, to 6:00 am there are sick clients that can't eat that early, because their

heavy medication, nor get up that early because of it, requesting breakfast to be

change to 6:00 am to 7:00 am, Plaintiff Doctor requested the department of

Homeless to have schedule change.

**Laundry:**

78. Is three days a week, at 4:00 pm, we are not allowed in our rooms until 5:00 pm,

laundry have to be at 6:00 am, so everyone can have their cloths ready.

79. From 5:00 pm to 12:00 am we have to be up waiting for our laundry, this system

and schedules are design to wear us out, and drive us want to leave the shelter

system, and DHS get to keep the money they got paid for the client.

**Cafeteria:**

80. Cafeteria is only open for Breakfast ,Lunch and Dinner, requesting to have the cafeteria open from 8:00 am to 10:00 pm, so clients can warm food, write letters, watch T.V.

81. Every client is to leave their rooms at 8:00 am and go to the third floor,  all day, there are a lot of activities going on, is too load and the third floor is not clear by the Fire department for 250 clients, which makes it a dangerous place, take into consideration the property is from the 1800 hundreds.

82. There are 250 clients in the shelter, is impossible for everyone to eat in the cafeteria which only holds 74 seats in one hour, that's only if the 250 clients are at the shelter at the same time.

**T.V.**

83. Every client is to go to the third floor, every day at 8:00 am, the T.V. and the recreation area, are off limits, until 4:00 pm, when there are lots of clients in the same room, without nothings to do there is always problems, requesting the T.V to be turn on at 6:00 am to 10:00 pm every day.

**Mail:**

84. The mail for 681 Clarkson Ave Building # 6 Kingsboro Men's Shelter is deliver to 681 Clarkson Ave Building # 8, Post Office inform me there is only one drop and the employee at MICA PROGRAM  are responsible for separating and delivering, in a timely matter,  we get our mail three and four days later.

85. Salvation Army approve five employee to go pick up the mail, but these employee only go to pick up the mail when building # 8, Mica Program, operated by Salvation Army  call requesting the mail to be pick up, this is every three to four days, we need

our mail to be deliver every day, 18 USC 1700, 1701, 1702 & 1703 our mail have to

be deliver every day, no obstruction, no delay , is the Law, FEDERAL LAW.

**Metro Cards:**

86. Is not being provide by the employee at Kingsboro Shelter, if the appointment  is not

mandated by the Case Worker at Kingsboro Star Shelter, or a Public Assistance

H.R.A. Human Resource Administration, for them to get more money, there is not

Metro Card given out, because our Public Assistance Case is active,  which is only

22.50 $, once we enter the shelter system our cash assistance is reduce to 22.50

every two weeks$ from 123.00 $ dollars.

87. Why, if we were approve by H.R.A. for the cash assistance why we have to pay the

shelter, when the shelter is getting Millions in State and Federal funds to house us

and we still don't get the Metro cards.

88. Clients with SSI, SSD, pensions  doesn't have to pay for being in the shelter, but HRA

give us the Cash assistance and DHS take it, who authorize DHS to go into our EBT

account and take our  cash assistance, who is responsible for these transactions.

89. The Government is funding our shortcomings, which are State and Federal Plus tax

payers money, why our cash assistance is being reduces, under the assumption that

Homeless are using DHS Services.

90. D.H.S.P : Department of Homeless Services Police, have transportation to the Shelter

and from the shelter,  a van comes and drop them at the shelter, every shift,  every

day, who paying for this services, and we the homeless cannot get a Metro card.

91. D.H.S.P. Employee  get a check, why provide them with vans that can be used for the

homeless.

92. DHS Case Workers, need a 4 years college degree, they do not work nor behave like they have a four year degree.

93. This is a very serious matter, before you give any more money to DHS, HRA and all this no-profit organizations, that are helping the homeless, please investigate when, who, where, and for what this money is going to be use.

**H.R.A.:**

94. Why H.R.A is paying for services we are not using, at the shelter almost everyone doesn't use the phone, razors, soap, breakfast, lunch and dinner look at how many people eat at the shelter.

95. Who gets up at 5:30 am to eat French toast, really toast! use their electricity, we don't' use it, all the equipment is in their offices.  The T.V. is turn on at 5:00 pm, why HRA is paying for utilities we the Homeless do not use.

96. Medicaid and HRA pay for our shortcomings, which are tax payer money, there is a lot of money involve in operating a shelter, and there are a lot, I mean a lots of shelters in NYC, someone is taking advantage of this situation and the money.

97. The system is design for us to fail, everything is to make it hard for us to succeed, so we can always came back to the shelter system, the more shelters the more clients, the more money.

98. Please this is a serious matter,  if we don't take action now is going to be worse and worse, what should we do, if there is a shelter in your neighborhood, talk to the homeless, ask them questions, and you are going to see that the problems is in every shelter across NEW YORK CITY and  DHS, HRA, from top to bottom everyone is getting a piece of the cake, on the homeless behave, undermining  our complaints,

aiding in the development of distress and mental anguish, is their plan to send clients to doctors, to keep us around as long as it takes, once HRA and the Medicaid stop paying we don't qualify no longer.

99. Case worker are unable to provide valuable feedback nor resources which are vital for the sustainability of us human homeless, undermining our right despite complaints, aiding in the development of distress and mental anguish, is their plan to send clients to their doctors.

100.      I have tried without success to resolve this problem contacting Advocate and Government agencies.

101.      I have taking upon myself to write this petition, and send copies to every City, State and Federal agencies so you are not the only one investigating this matter, thank you so much for your time in this matter.

102.      Water Fountains: there are no water fountains with warm water in the facility, when request warm water, Plaintiff was advice to go to the hospital and get a medical excuse, which Plaintiff did.

103.      Breakfast is at 5:30 am, No homeless, gets up that early, plaintiff requested to have breakfast at 7:00 am because Plaintiff need to have food with his medication at 8:00 am, was advices to go to the Hospital to get a medical excuse, which plaintiff did, registration in the hospital pay by Madicaid.

104.      The food at Kingsboro STAR Men's Shelter and at every shelter plaintiff been, is a seal container, with 12oz of food inside for dinner, for lunch is always a cold sandwich, there is no nutrition fact on the containers, where the food come from, what is in the food, how it was prepared.

105.     During Breakfast, lunch and dinner there are only 74 sits, for 250 homeless to eat in one hour, homeless are to leave the cafeteria at 6:30 am.

106.     The Television on the third floor is turn on from 5:00 pm to 10:00 pm Plaintiff have to leave his dormitory, and go to the third floor to do nothing, sit there, while there are groups therapy going on, everything is done on the third floor.

107.     Metro Cards are not being provided, if is not an appointment that concern Kingsboro Men's shelter.

108.     There is no Metro Cards. If Plaintiff had to go to a job interview, an appointment with Parole officer, school, housing, there are no metro cards.

109.     Plaintiff Parole Officer had to request Kingsboro Star Men's Shelter manager to provide Plaintiff with metro card so plaintiff go to Parole Officer interview.

110.     Only for Public Assistance appointment because the shelter does not want my Public Assistance case close.

111.     Once Plaintiff entered the Department of Homeless Services Plaintiff Cash Assistance is reduce to $ 22.00 dollars every two weeks and $ 200.00 food Stamps.

112.     During the Callahan Inspection, every homeless was given a Metro Card to leave the Kingsboro Men's Shelter, so the homeless could not speak with the inspectors.

113.     Plaintiff cannot do much with $ 22.50 every two weeks. Plaintiff is being force to eat Department of Homeless Services food, wash cloths with Department of Homeless Services detergent, use their toiletries, phone service, and every services

that **Department of Homeless Services Provide"** provide but Plaintiff does not use.

114.     Because plaintiff is never in the Shelter, plaintiff have to leave the shelter at 8:00 am and is not allowed back in to the dormitory until 5:00 pm, why Department of Homeless Services is getting pay for services they said they provide and homeless do not use.

115.     During the Callaham inspection every homeless was giving a Metro Card to leave the facility, because Kingsboro STAR Men's shelter did not wanted the inspectors to speak to the homeless, that day 250 Metro cards where give out.

116.     There are numerous Phone company making a profit, Plaintiff have two phones, Assurance wireless phone, which is a federal Lifeline assistance Program by Virgin mobile.

117.     Safelink is another free phone provider that provides the same services, for both I was ask to provide my **Medicaid Card,** I was approve for both phone, plus the phone in Kingsboro Men's Shelter, this is pay by Human Resources Administration and Tax Payers money.

118.     Directors at Kingboro Men's Shelter  were unable to provide plaintiff with valuable feedback, nor resources which are vital for the sustainability of us human homeless, undermining our right, despite complaints, aiding in the development of distress and mental anguish.

119.     Mail is given out every three to four days at Kingsboro STAR Men's Shelter. Plaintiff inquired about the mail delay, because the mail list is put out every three to four days.

120.     On 2/15/13 Plaintiff Complained to Director of Operation and Director of Social Services at Kingsboro STAR Men's Shelter, Plaintiff was advice to go to the 681 Psychiatric Center where all the mail goes for 681 Clarkson Avenue.

121.     Plaintiff when to the Psychiatric Center where Plaintiff was not allowed to enter, security advice Plaintiff to call 718-221-7260.

122.     On 2/15/13 Plaintiff when to The Salvation Army which operated a MICA Program in building # 8 inside 681 Clarkson Avenue, Major Stoop Spoke stated: I would take your complaint and investigate this matter.

123.     A week later Plaintiff spoke with Mr. Phillips Director of Social Services which operate the MICA program, Mr. Phillips advice Plaintiff to go see Ms. Tracy Apia in building # 8, Plaintiff.

124.     A representative for Ms. Apia spoke to Plaintiff, and explain the way the mail is processed and deliver to building # 6 and # 8 from the Psychiatric Center.

125.     The Post Office Manager informed Plaintiff that there only one "drop" to 681 Clarkson Avenue Brooklyn New York 11203, and it goes to the Psychiatric Center.

126.     The employee at the Psychiatric Center separated the mail and then call building # 6 Kingsboro Star Men's Shelter employees  and building # 8 which is the MICA program employee to come pick up the mail.

127.     On 3/18/13 Plaintiff went to do laundry, which the schedule changes every day, an employee for Kingsboro STAR Men's Shelter refuse to do Plaintiff laundry, and verbally abuse plaintiff.

128.     Plaintiff call 911 because Kingsboro men's shelter employee denied Plaintiff access to his dormitory to get plaintiff medication.

129.    Once a client is process and given a permanent shelter, is for one year, once the homeless client is register to that shelter that shelter is going to get State and Federal Funds for that client, plus funds from Human Resources Administration.

130.    That homeless client might not show up at night, that shelter still gets pay for providing services to a homeless that does not use them.

131.    Every first of the month client get their checks, SSI, SSD and spend the night outside of the shelter, for those days, that the client is not in the shelter, the shelter gets pay for housing the Client, for food, electricity.

132.    Water and all the services the shelter provide, but the Homeless client do not use.

133.    From Kingsboro STAR Men's Shelter Plaintiff was giving an unwanted transfer to another shelter, I Keener Building Wards Island NY 10035, a week later again Plaintiff was transferred to another shelter THE STADIUM 1260 Sedgwick Avenue Bronx, NY 10452 three weeks later again Plaintiff was giving another transfer to 988 Myrtle Avenue Brooklyn NY 11206.

134.    Plaintiff file a Notice of Claim with the City Comptroller Office, Complaining about all the discrimination at Kingboro Men's Shelter incidents, Claim Number 2013PIO14686, Claim was Disallowwed on June 5, 2013 because Plaintiff did not file within the 90 days from the day of occurrence.

135.    Plaintiff Notice of claim had different Claim/Complaints with different dates.

136.    Mr. DAVID BARBARO PROXY FOR ROBERT HOWE, Disallowwed Plaintiff Notice of Claim base on one incident date.

137.    Plaintiff was trying to prove a pattern of discriminatory behavior by
employees of Kingsboro Men's Shelter, and Department of Homeless Services, mis-
manergment of State and Federal Money

138.    Velda Graves Individually and as Director Kingsboro STAR Men's Shelter
refuse to Schedule a supervisory review

**The Following Complaint and incident took place at Myrtle Men's Shelter 988 Myrtle
Avenue Brooklyn NY 11206**

**139.**    On August 1, 2013 Plaintiff was transferred to Myrtle Men's Shelter, did
another intake interview which was done in the recreation area in front of other
clients, there was no confidentiality.

**140.**    Plaintiff did not was ask in the intake interview if plaintiff is allergic to the
food, or his religion prohibit Plaintiff from eating or drinking the food DHS provide,
but Plaintiff is force to eat it because again Plaintiff Cash Assistance is reduce to $
22.00 if the shelter provide meals.

**141.**    The Facility was not ready for operations because the oven did not have Gas,
and the 12 oz food containers without nutrition facts nor Ingredient label were
frozen Plaintiff had to cook it in the Microwave.

**142.**    Department of Homeless Services 12 oz food containers don't have the
Calories nor the nutrition that a single adult homeless on Medication need.

**143.**    There is no recreation, the T.V is turn on at 5:00 PM, the activities of the day
comes from Google and are posted on the bulletin board, for the homeless to go to
places that gives out free staff.

144.     The Shelter is getting State and Federal funds to provide us the homeless with these activities, and the shelter want us to go get them someplace else, Department of Homeless Services and their Private Shelters suppose to give us.

145.     If Plaintiff have to leave the dormitory at 9:00 am and return at 5:00 pm what services Plaintiff use that day, none, why the shelter is getting pay for services they provide but Plaintiff don't use.

146.     There is a Phone that Human Resources Administration pay for inside the shelter, but Plaintiff do not use it. In every shelter there is a phone, no homeless client use it.

147.     Every client have a free phone from Assurance Wireless or Safelink. Why Human Resource Administration is paying for this phone services that Plaintiff and others clients do not use.

148.     There is no electricity in the dorm area, every homeless have to go to the recreation area to charge their phone.

149.     Plaintiff goes to appointments, those days Plaintiff get back to the shelter late, no lunch no dinner, why the shelter got pay.

150.     Plaintiff Cash Assistance was reduce to $ 22.00 dollars every two weeks and $ 200.00 food stamps.

151.     Plaintiff cannot buy a hot meal with food stamps, if plaintiff is force to eat out, every time plaintiff have an appointment,  Plaintiff is force to eat junk food, is the only item that a Homeless can buy with food stamps

152.     Myrtle Men's Shelter just like every shelter operated under Department of Homeless Policies and Procedure, are forcing Homeless to use their items and

services, by not allowing personal Hygiene items, detergent, food items, into the shelter

153.     The detergent is industrial detergent which mean for industrial machines and a lot more clothing is stronger than the regular detergent Plaintiff buy.

154.     The food is a 12 oz un-label container.

155.     Once a shelter is approved to serve the homeless, there is no supervision from the Department of Homeless Services.

156.     Every shelter does what they want, Undermining Department of Homeless Services Policies and Procedure, State Law Federal Law and the Homeless.

157.     Designing a system for DHS to get funds from the Human Resources Administration The State and Federal Government, for Services DHS say they provide but we the Homeless don't use nor need.

158.     After Graduating Three Substance Abuse Program. Pay by **Medicaid and Human Resources Administration.**

159.     Being in ten different shelters operated under Department of Homeless Services Policies and Procedure.

160.     Being on Public Assistance for 5 years operated by The Human Resources Administration Plaintiff have enough facts to prove that Medicaid is being abuse, and State and Federal Funds Tax Payers Money is being use for something else but to serve the Homeless.

161.     The following Shelters are under the authority and policies and procedures of (DHS) and (HRA).

162.    Kingsboro STAR Men's Shelter 681 Clarkson Avenue Building # 6 Brooklyn
New York 11203.

163.    Community Support Services 1 Keener Building Wards Island, New York
10035.

164.    Kingsboro Psychiatric Center Mail Complain, 681 Clarkson Avenue New York
11203, 718-221-7700

165.    The STADIUM Men's Shelter 1260 Sedgwick, Bronx New York 10452

166.    Human Resources Administration 180 Water Street New York New York
10038.

167.    Samaritan Village  Men's Shelter 988 Myrtle Avenue, Brooklyn New York
11206.

1/13/15